IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEWIS BULLINGTON,

    Plaintiff,

vs.                                                                                          Civ. No. 21-7 KK

KILOLO KIJAKAZI, Acting
Commissioner of the Social Security
Administration,

    Defendant.

**ORDER ON MOTION FOR ATTORNEY FEES
UNDER THE EQUAL ACCESS TO JUSTICE ACT**

THIS MATTER is before the Court on Plaintiff Lewis Bullington's Opposed Motion for Attorney Fees and Costs Pursuant to the Equal Access to Justice Act (Doc. 33), filed June 14, 2022. Defendant filed a response in partial opposition on June 22, 2022, and Plaintiff filed a reply in support on July 6, 2022. (Docs. 34, 35.) Having considered the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, the Court FINDS that Plaintiff's Motion is well-taken in part and should be GRANTED IN PART and DENIED IN PART as set forth below.

The Equal Access to Justice Act ("EAJA") requires the Court to award attorney fees in covered cases if: (1) the plaintiff is a prevailing party; (2) the United States' position was not substantially justified; and, (3) there are no special circumstances that make a fee award unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (citing 28 U.S.C. § 2412(d)(1)(A)). However, the fee award must be reasonable, and the Court "retain[s] substantial discretion in fixing the amount." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161, 163 (1990); *Hackett*, 475 F.3d at 1168; *see also Collazo v. Shinseki*, 2010 WL 145955, at *1 (Vet. App. Jan. 15, 2010) ("The [Court] must

determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation.") (quoting *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987)). The applicant bears the burden of (1) establishing its entitlement to a fee award, (2) providing appropriate supporting documentation, and (3) demonstrating that the requested fee award is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)[1]; *Baldridge v. Nicholson*, 19 Vet. App. 227, 233 (2005).

"[T]he most useful and objective starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Baldridge*, 19 Vet. App. at 233 (quoting *Hensley*, 461 U.S. at 433). However, an applicant "is not necessarily entitled … to be compensated for all time spent on the case," even if all such time was reasonably spent. *Id.* Rather, in awarding EAJA fees, the Court has "a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result." *Id.* at 233 (quoting *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 975 (D.C. Cir. 2004) ("*Role Models"*)). Thus, for example, an EAJA applicant's attorney must "make a good faith effort to exercise billing judgment" by excluding hours that are "excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* at 234 (quotation marks omitted). Also, the attorney must "justify any time in excess of what would be considered the normal time needed to accomplish a particular task by providing a detailed, specific explanation of why the time exceeded that norm." *Id.* at 235 (citing *Ramos,* 713 F.2d at 554).

---

[1] In *Jean*, the United States Supreme Court explained that once a litigant has shown entitlement to EAJA fees, "the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*." 496 U.S. at 161.

A fee applicant's supporting documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.'" *Role Models,* 353 F.3d at 970. *Inter alia*, billing records must identify the persons whose time is being billed and their role in the case. *See id.* at 971–72 (explaining that reasonableness of fees cannot be evaluated without knowing who is charging the fees, rendering time records for unidentified persons "manifestly inadequate"). Moreover, "work that is purely clerical in nature may not be billed by any person, including attorneys." *Baldridge*, 19 Vet. App. at 236.

In his Motion, Plaintiff seeks $10,202.40 in EAJA fees. (Doc. 33 at 3.) Defendant does not dispute that Plaintiff is a prevailing party for purposes of the EAJA, nor does she contend that her position was substantially justified or that special circumstances make a fee award unjust. (Doc. 34 at 2); *Hackett*, 475 F.3d at 1172. Consequently, Defendant does not object to Plaintiff's request for $5,144.80 in fees "for time spent on legal tasks such as analyzing medical records, preparing different sections of Plaintiff's Motion to Remand, and preparing a Reply." (Doc. 34 at 3.)

However, Defendant does object to the remainder of Plaintiff's fee request, arguing that it is unreasonable because it seeks some $5,057.60 in fees for 23.2 hours of attorney-client communications. (*Id.* at 3-6.) Defendant identifies two major problems with this portion of Plaintiff's fee request: (1) the time billed greatly exceeds what would be considered normal yet Plaintiff failed to adequately explain why; and, (2) about 14.3 hours of the billed communications occurred after December 15, 2021, when Plaintiff filed his reply, (Doc. 29), making these communications wholly unnecessary to a successful result. (Doc. 34 at 3-6.) Thus, Defendant "suggests that the Court should reduce the amount of time billed for client communication from 23.2 hours to 5 hours or less." (*Id.* at 5.)

In his reply, Plaintiff "acknowledges … that the communications bill is uncommonly large," but argues that it is nevertheless reasonable because most of the bill consists of time counsel spent reviewing communications from his client, who is mentally ill. (Doc. 35 at 1-3.) And although counsel admits that many of these communications were "incidental to the representation," he asserts that he still had an ethical obligation to review them. (*Id.* at 3-4.) In addition, Plaintiff notes that it is generally appropriate for attorneys to bill for time spent communicating with clients.[2] (*Id.* at 4-5.)

Plaintiff's arguments overlook that the hours an attorney believes he must work to meet his ethical obligations may be considerably more than the hours "actually needed to achieve [a] favorable result." *Baldridge*, 19 Vet. App. at 233; *Collazo*, 2010 WL 145955 at *2. Here, Plaintiff's counsel admits that his client sent him "frequent emails and voicemail messages regarding various topics incidental to the representation," such as "his life circumstances" and his "frustration" with various entities. (Doc. 35 at 3.) Plainly, Plaintiff's counsel did not need to review these messages to achieve a favorable result, and as such, the public should not bear the expense of his review, even if he believed it was ethically mandated.[3] *Baldridge*, 19 Vet. App. at 233; *see generally Peters v. Peake*, 2008 WL 4414257, at *1 (Vet. App. Sept. 22, 2008) (reducing hours billed for client

---

[2] To support this assertion, Plaintiff relies on an article entitled, "Billing Tips for New Lawyers," which states that new attorneys "can and should bill for tasks like" communicating with clients. (Doc. 35-1 at 4.) However, earlier in this article, the author advises new attorneys to "bill all the time you spend on a task, *even if you know some of it will be marked down*." (*Id.* at 3 (emphasis added).) Indeed, the author expressly recognizes that, while an attorney should initially account for all of the time she spends on case-related tasks, not all of that time should or will be billed to the client. (*Id.*)

[3] Moreover, it seems to the Court that the initial task of vetting Plaintiff's communications for potentially pertinent information was an administrative one, such that counsel should not have billed for it even though he performed it himself rather than assigning it to an assistant. *Baldridge*, 19 Vet. App. at 236. Also, although counsel Benjamin Decker attested that *he* provided the professional services at issue, nine of the entries on the attached invoice were made by "LKG" rather than "BD"; and, Plaintiff fails to identify who LKG is and what his or her role in the case was, rendering these entries manifestly inadequate. (Doc. 33-1 at 1, 3-5); *Role Models,* 353 F.3d at 971-72.

communication because proceedings were "appellate in nature and based on a fixed record" and the plaintiff failed to establish "that extensive client communication was necessary").

Also, the Court agrees with Defendant that billing 14.3 hours for communications that occurred after counsel filed Plaintiff's reply brief is wholly excessive. As the United States Court of Appeals for Veterans Claims explained,

> [w]hen all briefs have been filed in an appeal … , there is generally no further need to consult the client about facts, or obtain the client's approval for any litigation action, or do much of anything pertaining to the case that is on appeal. The major exception is when there are negotiations concerning settlement; there were no such negotiations in this case. The only reasonable approach to client communications in these circumstances is to tell [the client] that the matter has been submitted for the Court's consideration, perhaps provide him with a reasonable estimate of how long matters are typically pending before the Court, and tell him that when the Court renders a decision the attorney will contact him quickly.

*Collazo*, 2010 WL 145955 at *2. The same is true here, and clearly, it should not take 14.3 hours to accomplish the tasks the *Collazo* court listed. For these reasons, the Court will limit the fee award for attorney-client communications to fees for five hours, as Defendant has suggested. (Doc. 34 at 5.)

Finally, the Court notes that, in his reply, Plaintiff seeks an additional $1,983.80 for fees incurred in litigating the parties' fee dispute. (Doc. 35 at 10-11.) However, because the Court must "consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Jean*, 496 U.S. at 163 n.10. Here, Plaintiff has not prevailed on the opposed part of his Motion for EAJA fees. Thus, the fees he incurred for pursuing the Motion beyond its initial filing will be excluded. *Id*.

In sum, the Court will award Plaintiff a total of $6,409.20 in fees pursuant to the EAJA, 28 U.S.C. § 2412(d), broken down as follows: (1) $5,144.80 in fees for time spent on legal tasks

related to Plaintiff's Opposed Motion to Reverse and/or Remand (Doc. 24); (2) $1,090 in fees for five hours of attorney-client communications; and, (3) $174.40 in fees for filing the present Motion.

IT IS THEREFORE ORDERED that Plaintiff's Opposed Motion for Attorney Fees and Costs Pursuant to the Equal Access to Justice Act (Doc. 33) is GRANTED IN PART and DENIED IN PART, and Plaintiff is awarded a total of **$6,409.20** in fees under the EAJA. *See Astrue v. Ratliff*, 560 U.S. 586, 590-92 (2010) (holding that Section 2412(d) directs courts to award fees and other expenses to the prevailing party, not the prevailing party's attorney). If Plaintiff's counsel receives attorney fees under both the EAJA and 42 U.S.C. § 406(b), Plaintiff's counsel shall refund the smaller award to Plaintiff pursuant to *Weakley v. Bowen*, 803 F.2d 575, 580 (10th Cir. 1986).

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE